**SO ORDERED: March 26, 2009.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATA AIRLINES, INC. | ) | Case No. 08-03675-BHL-11 |
| | ) | |
| Debtor | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF CONFIRMATION OF THE FIRST AMENDED CHAPTER 11 PLAN OF THE DEBTOR**

The Court has considered the First Amended Chapter 11 Plan of the Debtor dated February 3, 2009, and all amendments, modifications, and supplements thereto (collectively, the "Plan"), filed by ATA Airlines, Inc. (the "Debtor").[1]  Having considered the Plan, the evidence presented, including proffers of testimony, the entire record in this Bankruptcy Case, and arguments and representations of counsel, the Court makes the following findings of fact and

---

[1]  Capitalized terms not defined in these Findings of Fact and Conclusions of Law have the meanings ascribed to them in the Glossary of Defined Terms attached as Exhibit A to the Plan.  If a capitalized term is not defined in either these Findings of Fact and Conclusions of Law or the Glossary of Defined Terms, then it has the meaning prescribed in the Bankruptcy Code or Bankruptcy Rules, as applicable.

H-771215_1.DOC

conclusions of law pursuant to Fed. R. Bankr. P. 7052.[2]

A. Introduction

1. On February 3, 2009, the Debtor filed its *First Amended Chapter 11 Plan of the Debtor* and the *First Amended Disclosure Statement Under 11 U.S.C. § 1125 in Support of the First Amended Chapter 11 Plan of the Debtor* (the "Disclosure Statement"). The Plan and Disclosure Statement, along with the other Solicitation Materials, were distributed to Creditors and parties-in-interest in compliance with the Disclosure Statement Approval Order (defined below). A copy of the Plan is attached as Exhibit A to the *Order Confirming the First Amended Chapter 11 Plan of the Debtor* (the "Confirmation Order"). These Findings of Fact and Conclusions of Law are made with respect to confirmation of the Plan.

B. Jurisdiction and Venue

2. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core matter under 28 U.S.C. § 157(b). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

C. The Bankruptcy Case

3. On April 2, 2008 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "Court"). The Debtor continues to manage its business and assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

---

[2] Where appropriate, findings of fact shall also be considered conclusions of law, and conclusions of law shall also be considered findings of fact. The Court reserves the right to make further findings of fact and conclusions of law.

H-771215_1.DOC                2

4. No trustee or examiner has been appointed in this chapter 11 case. On April 16, 2008, the United States Trustee for Region 10 (the "U.S. Trustee") appointed a committee of unsecured creditors (the "Committee") pursuant to 11 U.S.C. §§ 1102(a)(1). The U.S. Trustee appointed the following entities to serve on the Committee: (a) Goodrich Corporation, (b) Servisair USA Inc., (c) Wilmington Trust Company, (d) Air Line Pilots Association, (e) Association of Flight Attendants-CWA, AFL-CIO. Wilmington Trust Company subsequently resigned. No replacement member has been appointed.

D. Notice of the Solicitation Materials and Related Matters

5. The Debtor provided actual notice to known Creditors, Interestholders, and parties-in-interest of (a) the Plan and the information and deadlines set forth in the *Order (I) Approving the First Amended Disclosure Statement Under 11 U.S.C. § 1125 in Support of the First Amended Chapter 11 Plan of the Debtor; (II) Fixing a Record Date; (III) Establishing a Deadline to File Notice of Cure Claims; (IV) Approving Solicitation Procedures; (V) Approving Form of Ballot and Establishing Voting Procedures; and (VI) Establishing Notice and Objection Procedures with Respect to Confirmation of the First Amended Chapter 11 Plan of The Debtor* (the "Disclosure Statement Approval Order") and the Solicitation Materials (as defined in the Disclosure Statement Approval Order); (b) the hearing date for confirmation of the Plan; (c) the deadline for voting on the Plan; and (d) the deadline to file and serve objections to confirmation of the Plan. The Debtor formulated the Plan in good faith and solicited acceptances thereon pursuant to, and in accordance with, the Disclosure Statement Approval Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court. The Plan has been solicited in good faith and the Debtor is entitled to the full protections afforded under 11 U.S.C. § 1125(e).

6. The *Certificates of Service Regarding Plan Solicitation* (Docket Nos. 1320, 1321 and 1322) and the *Certificate of Mailing* (Docket No. 1362)(collectively, the "Certificates of Service") were filed regarding service of the Solicitation Materials on Creditors, Interestholders, and the other parties entitled to service under the Disclosure Statement Approval Order. The Certificates of Service demonstrate that the Solicitation Materials were mailed to such parties on February 20, 2009. The Debtor is conclusively determined to have provided all Creditors, Interestholders, and parties-in-interest, whose names and addresses were known to the Debtor, with adequate and sufficient notice of the foregoing. Additionally, the Plan, Disclosure Statement, and Disclosure Statement Approval Order were each posted on the website maintained by the Debtor's notice agent (BMC Group). The notice provided by the Debtor is adequate under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, and the Local Rules and orders of this Court; and such notice did apprise the parties receiving same of the Plan and information and deadlines in the Disclosure Statement Approval Order.

E.   Filing of the Assumption Schedule and Plan Documents

7. As required by the Disclosure Statement Approval Order, on February 20, 2009, the Debtor filed its *Schedule of Assumed Executory Contracts* (Docket No. 1281) (the "Assumption Schedule"). Pursuant to section 5.1 of the Plan, the Debtor determined not to assume any Executory Contracts, and accordingly there are no contracts listed on the Assumption Schedule.

8. Also on February 20, 2009, the Debtor filed the Plan Documents under pleadings titled *Notice of Filing of Employee Claim Registers* (Docket No. 1282) and *Notice of Filing of Purchase Agreement Constituting a Plan Document Under the Debtor's Chapter 11 Plan* (Docket No. 1284)(the "Notices of Plan Documents"). The Notices of Plan Documents were

served on all parties on the operative service list and were posted on the publicly available website maintained by the Debtor's notice agent (BMC Group). The Plan Documents are the documents (or substantial forms thereof) instrumental to consummation of the transactions described in the Plan.

F.  Disposition of Executory Contracts

9. The Plan provides for (a) the assumption of the Executory Contracts described in Sections 5.1 of the Plan, and (b) the rejection of all other Executory Contracts, including the CBAs, described in Sections 5.2 and 5.3 of the Plan. Because the Debtor did not identify any Executory Contracts in the Schedule of Assumed Executory Contracts, all Executory Contracts to which the Debtor is a party will be rejected under the Plan. Additionally, pursuant to the Global Settlement, the Debtor and the Unions have agreed that all CBAs are deemed terminated, extinguished, and rejected under 11 U.S.C. §§ 365(a) and 1113(a), and are of no further force and effect. The Debtor's rejection of the Executory Contracts and the CBAs under the Plan reflects the Debtor's sound business judgment, and is reasonable and in the best interests of its bankruptcy estate. *See* Proffer of Direct Testimony of Steven S. Turoff in Support of Confirmation of the First Amended Chapter 11 Plan of the Debtor.

G.  Objections to Confirmation of the Plan and Disposition Thereof

Ashley Mach

10. Ashley Mach filed a document styled *Objection to Confirmation* (Docket No. 1356) (the "Mach Objection"). Ms. Mach's proof of claim no. 2060 for $587.92 was disallowed and expunged in the *First Order Sustaining in Part, Overruling in Part, and Adjourning in Part Debtor's Seventh Omnibus Objection Pursuant To Federal Rule of Bankruptcy Procedure 3007 to Claims that (I) Assert an Incorrect Priority Status, (II) Do Not Comply with Applicable Form*

*or Rules, or (III) Have Been Satisfied* (Docket No. 1299). In the Mach Objection, Ms. Mach is objecting to the treatment of her claim, and does not seek any basis for objecting to the Plan. It is manifest that Ms. Mach's objection was incorrectly styled as an objection to plan confirmation.

### Airliance Materials LLC

11. Airliance Materials LLC ("Airliance") filed its *Limited Objection to Confirmation of the First Amended Chapter 11 Plan of the Debtor* (Docket No. 1357) (the "Airliance Objection"). In the Airliance Objection, Airliance suggests that the Plan "does not set forth treatment required for confirmation under Section 1129 a)(9)(A)[sic] of the Code." Airliance requests that the Plan be amended to specifically provide that the Plan requires full payment of Administrative Claims in cash on the Effective Date, and that the Confirmation Order specifically provide that Allowed Administrative Claim granted to Airliance in the *Order Resolving Debtor's Objection to Proof of Claim Number 4235 filed by Airliance Materials LLC* (Docket No. 1212) be paid in accordance with the requirements of § 1129(a)(9)(A).

12. To resolve the Airliance Objection, the Debtor added language to the Confirmation Order clarifying that the Debtor will pay Allowed Administrative Claims (except Professional Compensation Claims) arising through the Confirmation Date in Cash in an amount equal to the allowed amount of such Claims. The Court finds that inclusion of the above language in the Confirmation Order resolves the Airliance Objection, and it is therefore moot.

### Wilmington Trust Company

13. Wilmington Trust Company ("WTC") filed its *Limited Objection of Wilmington Trust Company to Confirmation of the Debtor's First Amended Chapter 11 Plan* (Docket No. 1358) (the "WTC Objection"). In the WTC Objection, WTC seeks to ensure that neither

confirmation of the Plan nor WTC's vote in favor of the Plan operates as a waiver, release, impairment or prejudice of WTC's claims against (a) GAL under that certain guaranty that GAL executed guarantying the Debtor's obligations under a lease agreement in which WTC acted as loan trustee, indenture trustee, and subordination agent (the "Guaranty") or (b) in the lawsuit filed by WTC against GAL on February 9, 2009 pending in the Supreme Court of the State of New York, County of New York, Commercial Division, Index No. 025839-00008 (the "Guaranty Action").

14. Based on the plain language of Section 8.2(e) of the Plan and the Debtor's representation on the record concerning the intended scope of the release, the Court finds that nothing in the Plan, including the release in Section 8.2(e) of the Plan, waives, releases, impairs, or prejudices WTC's claims against GAL under the Guaranty or in the Guaranty Action.

### Airlines Clearing House, Inc.

15. The Airlines Clearing House, Inc. ("ACH") filed its *Conditional Objection of Airlines Clearing House, Inc. to Confirmation of the Debtor's First Amended Chapter 11 Plan* (the "ACH Objection")(Docket No. 1360). In the ACH Objection, ACH objects to confirmation of the Plan only to the extent it seeks to convey clearinghouse receivables owing from other ACH participants to ATA free and clear of offsetting clearinghouse payable owing to the same ACH participants from ATA.

16. As indicated in the ACH Objection, the Debtor and ACH, prior to the filing of the objection, agreed to the language specified in paragraph 10 of the ACH Objection, which language has been incorporated in the Confirmation Order. The Court therefore finds that the ACH Objection is moot.

Informal Objections/Comments

17. In addition to the formal objections discussed above, the Debtor also received informal comments from the Department of Justice (on behalf of the United States) and other creditor constituents. The Debtor negotiated resolutions of the informal comments with each of the creditor constituents, which resolutions were implemented into the provisions of the Confirmation Order. Based on the representations of the parties on the record at the Confirmation Hearing, the Court finds that each of the informal comments has been resolved.

H.   The Global Settlement

18. The Plan implements the terms and conditions of a settlement and compromise - the Global Settlement - by and among the Debtor, the Lenders, the Administrative Agent, the Affiliates, the Committee, the Unions, and Batman regarding Claims asserted against the Debtor and other parties. The terms of the Global Settlement are embodied in the ATA Labor Settlement Agreement (as defined in the Disclosure Statement) and the Plan Term Sheet (as defined in the Disclosure Statement). A discussion of the Global Settlement is contained in Article VIII of the Disclosure Statement. The Plan constitutes a motion to compromise controversy under Bankruptcy Rule 9019, and seeks approval of the Global Settlement as incorporated in the Plan.

19. The Court has considered the factors for determining whether to approve the compromise embodied in the Global Settlement. Those factors include (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of the litigation and the expense attendant to it; (c) the difficulty in collecting any judgment; and (d) the paramount interests of creditors, with proper deference to their reasonable views of the settlement.

20. The evidence presented at the Confirmation Hearing in support of the Global Settlement more than satisfies the applicable evidentiary standard for approval of a compromise in bankruptcy. The compromise embodied in the Global Settlement is fair and equitable, and in the best interest of the Debtor, its creditors, and the bankruptcy estate.

I. <u>Sale of the New Membership Interest to Southwest Airlines Co.</u>

21. The Plan provides for the sale of certain authorizations and assets comprising the Debtor's business to Southwest Airlines Co. ("<u>Southwest</u>") through the acquisition of the New Membership Interest pursuant to the Purchase Agreement. After the filing of the bankruptcy, the Debtor undertook significant steps to maintain and market the assets comprising its Business. The Debtor's marketing efforts are detailed in the *Unsworn Declaration of Steven S. Turoff in Support of Motion to Approve the Debtor's Selection of Southwest Airlines Co. as the Party Submitting the Highest and Best Offer for the Acquisition of the Debtor's Business and Related Relief* (Docket No. 996) and the *Supplemental Unsworn Declaration of Steven S. Turoff in Support of Motion to Approve the Debtor's Selection of Southwest Airlines Co. as the Party Submitting the Highest and Best Offer for the Acquisition of the Debtor's Business and Related Relief* (Docket No. 999). The facts contained in the unsworn declarations are incorporated herein by reference, and are adopted by the Court as its findings of fact.

22. On December 2, 2008, the Court entered an order approving the Debtor's selection of Southwest as the party submitting the highest and best offer for the acquisition of the Debtor's business, which consists of certain executory contracts and unexpired leases; certain intellectual property; goodwill; manuals, logs, and records related to its operating assets and authorities; authorizations that allow it to operate as a commercial airline; computer databases and software; certain airport operating authorities; and other miscellaneous tangible and intangible assets.

23.     The transactions effectuating, and the terms and conditions governing, the sale of the New Membership Interest to Southwest are embodied in the Purchase Agreement, which was filed as a Plan Document.  Under the Purchase Agreement, as implemented in the Plan, the Debtor will form New ATA as a limited liability company organized under the laws of the State of Delaware.  On the Effective Date, the Debtor will transfer and convey all of the property and authorizations comprising the Retained Assets to New ATA.  Also on the Effective Date, the Debtor will issue to Southwest the New Membership Interest free and clear of all Liens, Claims, interests, and other encumbrances in exchange for the purchase price specified in the Purchase Agreement.  The aggregate cash consideration to be paid by Southwest for the acquisition of the New Membership Interest is $7.5 million (the "Purchase Price").

24.     The Purchase Agreement was negotiated, proposed, and entered into by and between the Debtor and Southwest without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtor nor Southwest has engaged in any conduct that would cause or permit the application of 11 U.S.C. § 363(n) to the sale, including having the Purchase Agreement voided.

25.     Southwest is a good faith purchaser in accordance with 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby.  Absent a stay pending appeal, if any, Southwest will be acting in good faith within the meaning of § 363(m) in closing the transaction under the Purchase Agreement at any time after the expiration of any stay of the Confirmation Order, whether pursuant to Bankruptcy Rule 6004(g) or otherwise.

26.     The terms and conditions of the Purchase Agreement and the Purchase Price to be paid to the Debtor by Southwest (a) are fair and reasonable; (b) valid, binding and enforceable; (iii) is the highest and best offer for the New Membership Interest and Retained Assets; (iv) will

provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative; and (v) constitute reasonably equivalent value and fair consideration for the New Membership Interest and Retained Assets.

27.     The transactions contemplated under the Purchase Agreement will, on consummation thereof, (a) be a legal, valid, and effective transfer of the New Membership Interest to Southwest with no further action required on the part of the Debtor and (ii) vest Southwest with good title to the New Membership Interest free and clear of all Liens, Claims, interests, and encumbrances.

28.     The Debtor may consummate the transactions and transfer the New Membership Interest free and clear of all Liens, claims, and interests of any kind or nature whatsoever because one or more of the standards set forth in 11 U.S.C. §§ 363(f)(1)-(5) has been satisfied. All parties with Liens of any kind or nature whatsoever in the New Membership Interest who did not object to the Plan, or who withdrew their objections to the transactions, are deemed to have consented pursuant to 11 U.S.C. §§ 363(f)(2) and 365.

29.     The execution of the Purchase Agreement and consummation of the transactions contemplated thereunder, is in the best interests of the Debtor, its bankruptcy estate, creditors, and all parties-in-interest.

30.     The Debtor has demonstrated good, sound, and sufficient business purpose and justification, and it is a reasonable exercise of its business judgment, to (a) sell the New Membership Interest on the terms and conditions contained in the Purchase Agreement and (b) consummate all transactions contemplated under the Purchase Agreement.

31.     The consideration provided by Southwest under the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

applicable federal and state law. Additionally, the consideration to be paid by Southwest under the Purchase Agreement is fair and reasonable and may not be avoided under 11 U.S.C. § 363(n).

33. Based on the evidence presented at the Confirmation Hearing, the Court finds that the transfer and conveyance of the Retained Assets to New ATA, and the corresponding sale of the New Membership Interest to Southwest, are consistent with the Debtor's business judgment, and are in the best interest of the creditors and the bankruptcy estate.

J. Releases and Exculpation

33. The Plan contemplates various releases and exculpations required under the Global Settlement. For the Global Settlement to be viable, the parties negotiated various releases and exculpations to resolve fully and finally all issues among the parties. The releases are incorporated in Sections 8.2(a)-(e) of the Plan, and the exculpation provision is incorporated in Section 8.3 of the Plan.

34. The supporting facts and rationales underlying the releases and exculpations are set out in the Disclosure Statement in Article XI, Section O. The Court adopts the facts and rationales set out in the Disclosure Statement as its own, and they are incorporated as if fully set forth herein. Based on the information contained in the Disclosure Statement and the other evidence introduced at the Confirmation Hearing, the Court finds that the releases and exculpations are reasonable, properly tailored, and necessary and appropriate for the transactions contemplated by the Global Settlement.

K. Impairment of Claims under the Plan

35. Claims in Class 1.2 are not Impaired under 11 U.S.C. § 1124.

36. Except for the Claims in Class 1.2, all Claims and Equity Interests are Impaired under 11 U.S.C. § 1124.

L.     Results of Voting on the Plan

37.     On March 23, 2009, the Debtor filed its Certification of Ballot Report ("Proponents' Certificate") (Docket No. 1370) with attached ballot report.  The Court accepts the results of the voting on the Plan as described in the Proponents' Certificate.

38.     Class 1.2 - Priority Unsecured Non-Tax Claims is unimpaired and not entitled to vote; however, Class 1.2 is conclusively presumed to have accepted the Plan under 11 U.S.C. § 1126(f).

39.     No votes were received in Class 3.2 - Secured Letter of Credit Claims or Class 5 - Subordinated Claims.  Pursuant to the Disclosure Statement Approval Order, however, the Class 3.2 is deemed to accept the Plan.  Class 5 is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g); however, the Debtor did not schedule any Subordinated Claims nor were any proofs of claim based on any Subordinated Claims filed against the Debtor.

40.     Votes were received in the following Classes, and based on the votes received and the tabulation thereof pursuant to the Disclosure Statement Approval Order, these Classes (including applicable subclasses) have accepted the Plan:  Class 1.1 - Priority Employee Claims, Class 2 - Secured Tax Claims, Class 3.1 - Lender Secured Claims, Class 3.3 - Other Secured Claims, Class 4 - General Unsecured Claims, and Class 6 - Equity Interests.  Class 6 is deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g); notwithstanding, the holder of the Equity Interests (Class 6) voted to accept the Plan.

M.     Confirmation Requirements Concerning the Plan

11 U.S.C. § 1129(a)(1):  Compliance with Title 11

41.     The classification of Claims and Equity Interests described in the Plan satisfies the standards of 11 U.S.C. § 1122.  The Plan complies with the applicable provisions of the

Bankruptcy Code, including 11 U.S.C. § 1123.  The requirements of 11 U.S.C § 1129(a)(1) are therefore satisfied.

### 11 U.S.C. § 1129(a)(2):  Plan Proponent's Compliance with Title 11

42.     The Debtor has complied with the terms of the Disclosure Statement Approval Order and the applicable provisions of the Bankruptcy Code.  The requirements of 11 U.S.C § 1129(a)(2) are therefore satisfied.

### 11 U.S.C. § 1129(a)(3):  Plan Proposed in Good Faith

43.     The Debtor has proposed the Plan with the legitimate and honest purpose of selling the authorizations and assets comprising its business to Southwest, winding down its remaining business, and making distributions to Creditors.  The Plan has not been proposed by any means forbidden by law.  The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  The Plan is the result of good faith, arms-length negotiations among the Debtor, the Lenders, the Committee, the Unions, Batman and other creditor constituencies.  The Plan has been proposed in good faith.  The requirements of 11 U.S.C § 1129(a)(3) are therefore satisfied.

### 11 U.S.C. § 1129(a)(4):  Disclosure and Approval of Payments

44.     During this Bankruptcy Case, Professionals have been required to file interim fee statements that are subject to approval by the Court.  Pursuant to the *Order Granting Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 100) and Section 3.4 of the Plan, Professionals are required to file final fee applications, which are also subject to court approval.  The Purchase Agreement does not contemplate the payment of any amounts to Southwest or its professionals.  Accordingly, any payment made or to be made by the Debtor, or by any person issuing securities or acquiring

properties under the Plan, for services or for costs and expenses incurred in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been approved by, or will be subject to the approval of, the Court as reasonable. The requirements of 11 U.S.C § 1129(a)(4) are satisfied.

### 11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders

45. Section 6.1(d) of the Plan provides that the existing members of the Debtor's board of directors shall be deemed terminated, and that the Plan Trustee shall nominate and elect new members for the Board of Directors. This procedure is consistent with the interests of Creditors and Interestholders and with public policy. In addition, the Debtor has disclosed the identify of the Plan Trustee and the Unsecured Creditor Trustee (and their respective proposed compensation). The requirements of 11 U.S.C § 1129(a)(5) are therefore satisfied.

### 11 U.S.C. § 1129(a)(6): Regulatory Rate Approval

46. The Debtor's business does not involve the establishment of rates over which any governmental regulatory commission has or will have jurisdiction after confirmation of the Plan, and therefore 11 U.S.C. § 1129(a)(6) is inapplicable.

### 11 U.S.C. 1129(a)(7): Best Interest of Creditors Test

47. The Debtor has prepared a liquidation analysis with respect to a hypothetical liquidation of the Debtor under chapter 7 of the Bankruptcy Code. This liquidation analysis is attached as Exhibit 3 to the Disclosure Statement. The Court accepts the results of the liquidation analysis and the discussion of thereof contained in the Proffer of Direct Testimony of Steven S. Turoff (Debtor's Exhibit 9). Based on the liquidation analysis, with respect to each impaired Class of Claims or Equity Interests, (a) each holder of a Claim or Equity Interest of such Class has either accepted the Plan or (b) will receive or retain under the Plan on account of

such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that the holder would so receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  The requirements of 11 U.S.C § 1129(a)(7) are therefore satisfied.

### 11 U.S.C. § 1129(a)(8):  Acceptance of Plan by All Classes

48. As disclosed in the Certificate of Plan Proponent, all impaired Classes of Claims (except Class 5 Subordinated Claims) voted to accept the Plan.  Class 5 Subordinated Claims and Class 6 Equity Interests are deemed to have rejected the Plan pursuant to 11 U.S.C. 1126(g).  Based on the evidence presented at the Confirmation Hearing, the Court finds that there are no Class 5 Subordinated Claims.  In addition, the holder of the Class 6 Equity Interest voted to accept the Plan, notwithstanding the deemed rejection.  Accordingly, the requirements of 11 U.S.C § 1129(a)(8) are satisfied.

49. Notwithstanding, at the Confirmation Hearing, the Debtor invoked 11 U.S.C. § 1129(b) to proceed with confirmation of the Plan over the presumed rejection by Class 5 and Class 6, and submitted cramdown evidence under § 1129(b) concerning those Classes.

### 11 U.S.C. § 1129(a)(9):  Payment of Priority Claims

50. The Plan, as modified in the Confirmation Order, provides for the payment of Allowed Administrative Claims and Allowed Priority Unsecured Non-Tax Claims in Cash on the later of (a) ten days after the Effective Date or (b) ten days after such Claim becomes Allowed.  Regarding Professional Compensation Claims arising through the tenth day after the Closing Date (and including fees and expenses incurred in preparing final fee applications and hearings on such applications), such Claims shall be paid (after applying the balance of any retainers held by professionals) within ten days after the such Claims become Allowed.  Under Section 4.1 of the Plan, holders of Allowed Priority Employee Claims (Claims entitled to priority under section

507(a)(4)) have agreed to the treatment provided by the Plan pursuant to the Global Settlement embodied in the Plan.  Alternatively, holders of Allowed Priority Employee Claims will receive deferred cash payments equal to the allowed amount of their Claims because the Plan allows such Claims in an amount equal to the Cash to be distributed on account of such Claims.  With respect to Claims of the kind specified in 11 U.S.C. § 507(a)(8), which are defined under the Plan as Priority Unsecured Tax Claims, the Plan provides that such Claims shall be satisfied in full at the election of the Plan Trustee by (a) payment of Cash in the amount of such Claim plus accrued interest after the Confirmation Date at the Tax Interest Rate within ten days after the later of (i) the Effective Date of the Plan (ii) the date such Claim becomes Allowed; or (b) agreement reached with the holder of such Claim.  The requirements of 11 U.S.C § 1129(a)(9) are therefore satisfied.

<u>11 U.S.C. § 1129(a)(10): Acceptance of Plan by Impaired Class</u>

51. Class 4 is comprised of Allowed General Unsecured Claims.  Class 4 is impaired under the Plan.  Without including any acceptance of the Plan by any insider, Class 4 voted to accept the Plan.  The Plan therefore complies with 11 U.S.C. § 1129(a)(10).

<u>11 U.S.C. § 1129(a)(11):  Feasibility</u>

52. At the Confirmation Hearing, the Debtor both presented testimony and proffered testimony of Steven S. Turoff concerning the feasibility of the Plan.  This evidence was not disputed at the Confirmation Hearing.  Based on this testimony and the supporting documentary evidence, the Court finds that the Debtor's projections provide a reasonable assurance that all Distributions to Creditors required to be made pursuant to the Plan will occur and the issuance of New Membership Interest to Southwest will be made.  Therefore, the Plan is feasible and complies with 11 U.S.C. § 1129(a)(11).

11 U.S.C. § 1129(a)(12): Payment of Fees

53. Section 3.6 of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930(a)(6) pursuant to the Plan Trust Agreement and the Unsecured Creditor Trust Agreement, and such provision was not objected to by the U.S. Trustee. Therefore, the Plan complies with 11 U.S.C. § 1129(a)(12).

11 U.S.C. § 1129(a)(13): Retiree Benefits

54. There are no retiree benefits to be paid by the Debtor, and therefore 11 U.S.C. § 1129(a)(13) is inapplicable.

11 U.S.C. § 1129(a)(14): Domestic Support Obligations

55. The Debtor is not required to pay a domestic support obligation, either under a judicial or administrative order or by statute, and therefore 11 U.S.C. § 1129(a)(14) is inapplicable.

11 U.S.C. § 1129(a)(15): Objection to Plan Confirmation by a Holder of an Unsecured Claim

56. The Debtor is not an individual, and therefore 11 U.S.C. § 1129(a)(15) is inapplicable.

11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities

57. Each of the Debtor, the Plan Trust, and the Unsecured Creditor Trust are a moneyed, business, or commercial corporation or trust, and therefore 11 U.S.C. § 1129(a)(16) is inapplicable.

11 U.S.C. § 1129(d)

58. The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act, and there has been no objection filed by any

governmental unit asserting such purpose.  Therefore, the Plan complies with 11 U.S.C. § 1129(d).

### 11 U.S.C. § 1129(b) Cramdown

59. There is insufficient equity value to pay all holders of Allowed General Unsecured Claims in full, and therefore there is no value for Distribution to holders of Allowed Subordinated Claims or holders of Equity Interests.  Under the Plan, Class 6 Allowed Equity Interests are canceled and are not entitled to any Distributions, and Class 5 Allowed Subordinated Claims (if any) will not receive any Distribution nor retain any Estate Property or interest in Estate Property on account of such Claims.  Under the Plan, no Claim or interest that is junior to those in Class 5 will receive any Distribution or retain any property on account of such Claim or interest.  There are no Classes of Claims or interests junior to Class 6 under the Plan.  Notwithstanding that Class 6 is receiving no Distribution under the Plan and is deemed to have rejected the Plan under 11 U.S.C. § 1126(g), the sole Interestholder in Class 6 voted to accept the Plan.  Thus, to the extent necessary, the requirements of 11 U.S.C § 1129(b) are satisfied.

N.      <u>Oral Findings on the Record</u>

60.      The Court's oral findings of fact and conclusions of law announced on the record at the Confirmation Hearing are incorporated by reference herein.

###

Requested:

Terry E. Hall (#22041-49)
Baker & Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
terry.hall@bakerd.com

Distribution:

Service List